### A01A0031. CAMPBELL v. THE STATE.
(545 SE2d 6)

MIKELL, Judge.

A jury found Robert Campbell not guilty under Count 1 of driving under the influence to the extent it was less safe for him to drive,[1] guilty under Count 2 of driving a vehicle while his alcohol concentration was more than 0.10 grams (a "per se" violation),[2] and guilty under Count 3 for failure to stop at a stop sign.[3] Counts 2 and 3 were merged for sentencing. On appeal, Campbell challenges several jury instructions as well as the general grounds. For the reasons set forth below, we affirm.

1. We first address Campbell's assertion that the evidence is insufficient to support his conviction of the per se violation. "On appeal the evidence is viewed in the light most favorable to the verdict, the appellant is no longer presumed innocent, and the appellate court determines evidence sufficiency and does not weigh evidence or

---

[1] OCGA § 40-6-391 (a) (1).
[2] OCGA § 40-6-391 (a) (5).
[3] OCGA § 40-6-72.

determine witness credibility."[4] Viewed in this light, the evidence reveals that at 11:37 p.m. on August 1, 1998, Georgia State Patrol Trooper Richard Mark Garner was traveling westbound on Highway 278 in Polk County when he saw Campbell's vehicle enter the highway after running a stop sign. The trooper testified that when he pulled Campbell over, he smelled a strong odor of alcohol emanating from Campbell's vehicle. Consequently, the trooper administered to Campbell the horizontal gaze nystagmus, the one-leg stand, and the portable alco-sensor field sobriety tests.[5] Believing Campbell was impaired, the trooper read him the implied consent notice mandated by OCGA § 40-5-67.1 (b) (2). Campbell submitted to an Intoxilyzer 5000 breath test. He gave two breath samples, the results of which were 0.107 and 0.109, respectively.

Campbell testified that on the night in question, he had consumed four twelve-ounce beers between 8:00 p.m. and 10:00 p.m. He denied that he was impaired or a less safe driver. A business partner of Campbell, who was one of his passengers, similarly testified that Campbell did not appear intoxicated or less safe to drive as a result of his alcohol consumption.

An expert witness for the defense, Dr. Woodford, testified that based on Campbell's size and the amount of alcohol he had consumed prior to 10:00 p.m., his blood alcohol concentration should have been no greater than 0.04 at 11:30 p.m. The expert also testified that the intoximeter results at issue were inaccurate because the machine was based on an average blood-to-breath ratio of 2,100 to 1, and Campbell's ratio was, in essence, only 1,533 to 1. The expert explained that testing 210 liters of Campbell's breath would cause intoximeter results 27 percent higher than his actual blood alcohol content. In this case, accounting for the margin of error due to Campbell's different blood-to-breath ratio, his blood alcohol content would have been approximately 0.078. Dr. Woodford then applied a margin of error of 0.02 and concluded that Campbell's content could have been as low as 0.058.

During rebuttal, the state called its own expert witness, Georgia Bureau of Investigation forensic chemist James Panter, who testified that the Intoxilyzer 5000 margin of error, as calibrated by the GBI, is 0.005. Panter explained that the 0.02 margin of error about which the defense expert testified related to the statutorily permissible variability between two sequential breath samples taken from a defendant.[6]

---

[4] *Brown v. State*, 239 Ga. App. 520 (521 SE2d 454) (1999).

[5] A videotape of the event was viewed by the jury but has not been included in the record on appeal.

[6] OCGA § 40-6-392 (a) (1) (B) requires taking two sequential breath samples from an

The credibility of the defense expert's attack upon the reliability of Campbell's breath test results was an issue for the jury to resolve.[7] Contrary to Campbell's assertions, Panter's testimony, together with the breath test results, was sufficient direct evidence to authorize a rational trier of fact to find beyond a reasonable doubt that Campbell had violated OCGA § 40-6-391 (a) (5).[8] Accordingly, this enumeration is without merit.

2. Campbell next asserts that the trial court improperly commented on the evidence when it charged the jury: "Any statement during [the] course of this trial which would suggest that Dr. Woodford's testing procedures or methods have been approved by the appellate courts of this state shall be disregarded by you."

Considered in context, the charge was in the nature of a curative instruction necessitated by Campbell's inappropriate attempt to bolster the credibility of his expert witness.

> Normally, a party may not bolster the veracity of its own witness until the witness has been impeached by the adverse party. . . . [E]vidence which goes to a witness's credibility is not relevant unless produced to attack the credibility of a witness, or to rehabilitate credibility when it has been attacked.[9]

Here, when establishing the qualifications of his expert witness, defense counsel asked him whether he had "been qualified with this testing method with other courts in Georgia, like the Georgia Supreme Court and the Court of Appeals." Dr. Woodford replied:

> They both recognized this, my testing, using this exact method, Supreme Court of Georgia in *Lattarulo [v. State]*,[10] which is my case, and another case, *Clay v. State*.[11] In both of those cases, I did the exact testing, the same kind of testing that I did on the defendant in this case, using the same equipment.

---

accused and provides that in order for either or both of the samples to be admissible in evidence, "the readings shall not differ from each other by an alcohol concentration of greater than 0.020 grams. . . ."

[7] *Brannan v. State*, 195 Ga. App. 709, 710 (3) (394 SE2d 562) (1990); see also *Scheipers v. State*, 234 Ga. App. 112, 113 (505 SE2d 835) (1998).

[8] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[9] (Citations omitted.) *Blige v. State*, 264 Ga. 166 (2) (441 SE2d 752) (1994).

[10] 261 Ga. 124 (401 SE2d 516) (1991).

[11] 193 Ga. App. 377 (387 SE2d 644) (1989).

Counsel handed the witness a copy of each case for identification purposes, then asked:

> Q: And did you, in fact, present this same testimony in those cases relating to the accuracy and reliability of the intoximeter and the 2100 — the same ratio?
> A: The same ratio, and I used the same equipment, same method and everything.

The district attorney objected, and defense counsel ceased this line of questioning. On redirect examination, defense counsel again sought to question his expert regarding the appellate courts' alleged "approval" of the expert's testimony in *Lattarulo v. State* and *Clay v. State*. The trial court called a bench conference and refused to permit counsel to suggest to the jury that the appellate courts had accepted his expert's theories. The trial court correctly noted that the cases merely stand for the proposition that testimony challenging the reliability or accuracy of intoximeter test results is admissible in evidence.

> The trial court has the right and the obligation to ask questions, restrict examination, and otherwise control the course of the proceedings in order to insure the truth is given to the jury in orderly fashion. In the absence of abuse, we will not interfere with the exercise of that discretion. The trial court is more than a mere referee or arbiter but is vested with the power to insure justice.[12]

In the case sub judice, the court properly exercised its discretion to correct the misapprehension created by defense counsel's questioning of his expert witness and the bolstering of the witness's credibility.

Finally, we take into account all of the judge's instructions in determining whether the trial court improperly expressed an opinion.[13] Here, the trial judge charged the jury that

> by no ruling or comment which the Court has made during the progress of this trial has the Court intended to express any opinion upon the facts of this case, upon the credibility of the witnesses, upon the evidence, or upon the guilt or innocence of the defendant, as these are all matters solely for the jury.

---

[12] (Citation omitted.) *Turner v. Wilmouth*, 161 Ga. App. 2, 4 (4) (288 SE2d 839) (1982).
[13] *Ellis v. State*, 216 Ga. App. 232 (453 SE2d 810) (1995).

Accordingly, we conclude that the trial court's comment did not violate OCGA § 17-8-57, and this enumeration lacks merit.

3. Campbell next enumerates as error the trial court's refusal to give his request to charge no. 13:

> In evaluating the evidence of Defendant's blood alcohol level, you may consider evidence of the possibility of error or circumstances that might have caused the Intoximeter 5000 machine to malfunction. This evidence will determine the weight, if any, that you would give to breathalyzer results (if admitted into evidence).

Campbell contends that absent this charge, he was deprived of his defense that the results of his breath test were incorrect. We disagree. As previously stated, Campbell's expert witness testified at length regarding the circumstances that might have led to an erroneous test result. Moreover, the case upon which Campbell relies, *Lattarulo v. State*, while permitting the introduction of such evidence, does not mandate the requested charge.[14] In addition, the trial court properly instructed the jury that "all evidence presented during the course of this trial shall be given such weight and credit as you think it is properly entitled to receive." The judge gave the pattern charge on expert testimony.[15]

> It is a fundamental rule in Georgia that jury instructions must be read and considered as a whole in determining whether the charge contained error. The failure to give requested instructions in the exact language requested, where the charge given substantially covers the same principle, is not grounds for reversal.[16]

As we held when we rejected a similar argument in *Parrish v. State*,[17] the "jury could not have failed to understand that it could accept the testimony of appellant's expert and reject the State's evidence."[18] Accordingly, the trial court did not err in refusing to give the requested charge.

4. Campbell also complains that the trial judge created an irrebuttable evidentiary presumption when he charged the jury that "[b]reath alcohol measuring equipment approved by the state crime

---

[14] 261 Ga. at 126 (3).

[15] See Suggested Pattern Jury Instructions, Vol. II: Crim. Cases (2nd ed. 1991), p. 12.

[16] (Citation and punctuation omitted.) *Walls v. State*, 233 Ga. App. 601, 604 (2) (504 SE2d 471) (1998).

[17] 216 Ga. App. 832 (456 SE2d 283) (1995).

[18] Id. at 834 (3).

laboratory is considered accurate if it's properly used." We rejected a similar argument in *Johnson v. State*:[19]

> The General Assembly determined that chemical analysis of blood, urine, breath or other bodily substance, when "performed according to methods approved by the Division of Forensic Sciences of the Georgia Bureau of Investigation . . ." shall be admissible as evidence of the amount of alcohol or drug in a person's system. OCGA § 40-6-392 (a) (1) (A). The scientific objectivity and reliability of intoximeter tests to determine blood alcohol concentration [were] approved in *Lattarulo v. State*.[20] Consequently, we do not agree with defendant that the instruction under review misstates the law. On the contrary, it is a correct statement of the law.[21]

As in *Johnson*, we hold in this case that the trial court did not err in giving the charge at issue.

5. Nor do we agree with Campbell's argument, based on *Rindone v. State*,[22] that the trial court was required to instruct the jury "that it could give the breath test results the weight that it deemed fit, including no weight at all" after charging the jury that "the relationship between alcohol in the blood and in the breath is a ratio of 1 to 2,100."[23] *Rindone*[24] merely approved the charge; it did not mandate it. Moreover, although Campbell raised this issue at the charge conference, he failed to submit a written request to charge on this principle. Accordingly, this enumeration provides no basis for reversal of Campbell's conviction.[25]

*Judgment affirmed. Blackburn, C. J., and Pope, P. J., concur.*

DECIDED JANUARY 16, 2001 —
RECONSIDERATION DENIED FEBRUARY 21, 2001 — 

*Spruell, Taylor & Associates, Billy L. Spruell, Melinda D. Taylor, James S. Astin*, for appellant.

---

[19] 231 Ga. App. 215 (498 SE2d 778) (1998); see also *Henson v. State*, 168 Ga. App. 210, 213 (4) (308 SE2d 555) (1983).
[20] 261 Ga. at 126 (3).
[21] 231 Ga. App. at 216.
[22] 210 Ga. App. 639 (437 SE2d 338) (1993).
[23] OCGA § 40-1-1 (1).
[24] 210 Ga. App. at 642 (7).
[25] *Grady v. State*, 212 Ga. App. 118, 120 (3) (441 SE2d 253) (1994).

*James R. Osborne, District Attorney, F. Andrew Lane, Jr., Assistant District Attorney*, for appellee.