A01A1401. MADDEN v. THE STATE.
(555 SE2d 832)

RUFFIN, Judge.

Following a bench trial, John Madden was found guilty of driving under the influence with a blood alcohol concentration of 0.08 or more and violating the restrictions of his limited driving permit. On appeal, Madden asserts that the evidence was insufficient to support his DUI conviction because the State failed to properly authenticate

---

[22] See id.
[23] See id.

the inspection certificate for the breath-testing device used to determine his blood alcohol concentration. In two enumerations of error, Madden also contends that his convictions should be reversed because the conduct occurred on a private drive rather than a public thoroughfare. For reasons that follow, we affirm.

Viewed in a light most favorable to the verdict, the evidence shows that on April 8, 2000, deputies from the Elbert County Sheriff's Department received word that a driver was trying to run over a pedestrian at Country Manor Mobile Home Park. The deputies arrived at the mobile home park where residents identified Madden, who was still behind the wheel of a truck, as the driver. Deputy Brandon Dye stopped the truck and asked to see Madden's driver's license and insurance card. Madden produced a limited driving permit, which showed he was permitted to drive only to and from work and school.

Dye noticed a strong odor of alcohol coming from Madden, and Dye asked him to take a field breath test. When Madden tested positive for the presence of alcohol, he was arrested, read his implied consent rights, and taken to the police department to have his blood alcohol level tested using the Intoxilyzer 5000. The machine indicated that Madden had a blood alcohol level of 0.119, which is above the legal limit.[1]

1. In his first enumeration of error, Madden contends that the trial court erred in considering the results of the breath test. According to Madden, the introduction of the Intoxilyzer 5000 inspection certificate in lieu of live testimony violated his constitutional right to confront witnesses against him. Madden also asserts that the inspection certificate was inadmissible because the State failed to lay a proper foundation for its admission.

Pursuant to OCGA § 40-6-392 (f), a certificate of inspection for approved breath-testing instruments, "[w]hen properly prepared and executed, . . . shall, notwithstanding any other provision of law, be self-authenticating, [and] shall be admissible in any court of law." Madden argues that this statutory provision violates his constitutional right of confrontation. We note, however, that the Supreme Court addressed this exact issue in *Brown v. State*[2] and decided otherwise. Accordingly, this alleged error presents no basis for reversal.[3]

Madden also contends that the trial court erred in admitting the inspection certificate because the State failed to lay a foundation for

---

[1] See OCGA § 40-6-391 (a) (5), which provides that "[a] person shall not drive or be in actual physical control of any moving vehicle while . . . [t]he person's alcohol concentration is 0.08 grams or more."

[2] 268 Ga. 76, 77 (485 SE2d 486) (1997).

[3] See id.

its admission as a business record. We note, however, that Madden did not object to the admission of the certificate on this basis at the time it was admitted, and "[t]he failure to make a timely and specific objection is treated as a waiver."[4] It follows that this alleged error presents no basis for reversal.[5]

2. In two enumerations of error, Madden asserts that he was improperly convicted because the driving infractions occurred on private rather than public property.

With respect to Madden's DUI conviction, his assertion is meritless. OCGA § 40-6-391 (a) (5) provides that it is unlawful for any person to "drive or be in actual physical control of any moving vehicle" with a blood alcohol level of 0.08 or more. The statute draws no distinction between driving on public roads versus private thoroughfares. Moreover, in *Cook v. State*,[6] our Supreme Court concluded that "there is no immunity from prosecution for [this] crime because the act was committed on private property."[7] It follows that the trial court did not err in finding Madden guilty of DUI notwithstanding the fact that he was driving on private property.

Madden also argues that we should reverse his conviction for violating the restrictions of his limited license because the conduct occurred on a private thoroughfare. We find this argument equally unavailing.

Initially, we note that Madden bases his argument on OCGA § 40-6-3 (a) (2), which provides that

[t]he provisions of this chapter relating to the operation of vehicles refer to the operation of vehicles upon highways except [that] [t]he provisions of this chapter shall apply to a vehicle operated at shopping centers or parking lots or similar areas which although privately owned are customarily used by the public as through streets or connector streets.

According to Madden, under the "plain language" of this statute, he cannot be convicted of conduct that occurred on a private thoroughfare. What Madden fails to acknowledge, however, is that the statute's plain language reveals that it applies only to "this chapter," which is Chapter 6. Madden was charged with violating Chapter 5,

---

[4] (Punctuation omitted.) *Geoffrion v. State*, 224 Ga. App. 775, 777 (1) (482 SE2d 450) (1997), overruled on other grounds, *Mullins v. State*, 270 Ga. 450 (511 SE2d 165) (1999).

[5] See *Reynolds v. State*, 230 Ga. App. 458 (1) (496 SE2d 474) (1998). See also *Hall v. State*, 241 Ga. App. 454, 462-463 (3) (525 SE2d 759) (1999); *Turner v. State*, 236 Ga. App. 592, 594 (1) (512 SE2d 699) (1999).

[6] 220 Ga. 463 (139 SE2d 383) (1964).

[7] Id. at 464 (1).

which governs the licensing of drivers. Thus, Madden's argument must fail.

Moreover, we note that the Supreme Court's reasoning in *Cook* extends beyond DUI cases.[8] As that Court noted, given the "widespread use of motor vehicles[ ] and the use of extensive private property for shopping centers and other purposes[,]" the State has a vested interest in protecting its citizens from those who abuse the privilege of driving.[9] The law requiring that operators of motor vehicles be properly licensed was enacted for public safety.[10] And those who drive without a license, or who violate the restrictions of a limited license, constitute a threat to public safety. Such danger is especially evident here, where Madden not only was driving in violation of his restricted license, but also was driving while under the influence of alcohol. It follows that the State was not barred from prosecuting Madden simply because his driving infractions occurred on private property.[11]

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED OCTOBER 25, 2001.

*Leverett & Daughtry, Billy I. Daughtry*, for appellant.
*Gary L. Aston, Solicitor-General*, for appellee.

---

[8] See *Jarrard v. State*, 195 Ga. App. 704-705 (1) (394 SE2d 555) (1990) (State permitted to prosecute habitual violator who was arrested while driving on private road).

[9] (Punctuation omitted.) Id.

[10] See *Nelson v. State*, 87 Ga. App. 644, 647 (75 SE2d 39) (1953) ("[t]o operate an automobile without first obtaining [a] license is . . . an infraction of our laws which are enacted for the public safety").

[11] See *Cook*, supra; *Jarrard*, supra.