### A06A1517. SIMMONS v. THE STATE.
(635 SE2d 849)

MIKELL, Judge.

Following a stipulated bench trial, Kristin Simmons was convicted of driving a golf cart under the influence of alcohol (OCGA § 40-6-391 (a)) and of driving with a suspended license (OCGA § 40-5-121 (a)). She now appeals,[1] contending in her sole enumeration of error that golf carts driven on a municipal trail system are outside the DUI provisions of OCGA § 40-6-391 (a). We affirm the conviction.

On the evening of October 31, 2004, Simmons drove her golf cart up to a Peachtree City police officer who was questioning several young men about a reported fight. Because one of the young men being questioned was her son, she asked the officer what was going on, and the officer noticed the smell of alcoholic beverage on her breath. The officer asked her if she had been drinking that evening. She replied in the affirmative and consented to voluntary field sobriety tests, which indicated that she was less safe to drive under OCGA § 40-6-391 (a) (1). She was arrested and given breath-alcohol tests, which indicated a blood alcohol concentration of 0.09, in violation of OCGA § 40-6-391 (a) (5). These results were stipulated at the bench trial.

Simmons contends that golf carts fall under the provisions of the Off-Road Vehicle Act of 1975,[2] and that the Uniform Rules of the Road contained in Title 40, Chapter 6, including the DUI provisions of OCGA § 40-6-391, do not apply to off-road vehicles.

Pretermitting the question of whether or not golf carts fall within the definition of "off-road vehicle" found in OCGA § 40-7-3, the DUI statute by its plain language applies to "any moving vehicle":

---

[1] Simmons has not appealed her conviction for driving with a suspended license.

[2] OCGA §§ 40-7-1 to 40-7-6.

A person shall not drive or be in actual physical control of any moving vehicle while: (1) Under the influence of alcohol to the extent that it is less safe for the person to drive; . . . [or] (5) The person's alcohol concentration is 0.08 grams or more at any time within three hours after such driving or being in actual physical control from alcohol consumed before such driving or being in actual physical control ended.[3]

A "vehicle" is defined in OCGA § 40-1-1 (75) to mean "every device in, upon, or by which any person or property is or may be transported or drawn upon a highway, excepting devices used exclusively upon stationary rails or tracks."

This Court has already determined that a golf cart is a "vehicle" within the meaning of OCGA § 40-1-1 (75). In *Coker v. State*,[4] we ruled that the driver's license requirements of OCGA § 40-5-20 (a),[5] which apply to drivers of "motor vehicles," necessarily apply to drivers of golf carts, because the golf cart is both a "vehicle" under OCGA § 40-1-1 (75) and a "motor vehicle" under OCGA § 40-1-1 (33).[6]

The appellant in *Coker* argued that golf carts are governed by the Code provisions for "motorized carts"[7] and are therefore exempt from the licensing provisions of OCGA § 40-5-20 (a). We rejected this argument, reasoning that,

[a]lthough the golf cart may have qualified as a motorized cart under OCGA § 40-1-1 (32), nothing in the motorized cart statutes exempts the drivers of such from having a driver's license when driving on the public highways of this State. The fact that the nearby moped statute (OCGA § 40-6-351) reaffirms the need for a license for that type of motor vehicle does not lead to the conclusion that the motorized cart statutes exempted motorized cart drivers from the general licensing requirement of OCGA § 40-5-20 (a) for the drivers of "any motor vehicle."[8]

---

[3] OCGA § 40-6-391 (a). See generally *Jones v. State*, 206 Ga. App. 604, 605 (2) (426 SE2d 179) (1992) ("OCGA § 40-6-391 refers to *moving* vehicles, not *motor* vehicles," and is not limited to vehicles which are self-propelled) (emphasis in original).

[4] 261 Ga. App. 646 (583 SE2d 498) (2003).

[5] OCGA § 40-5-20 (a) ("No person . . . shall drive any motor vehicle upon a highway in this state unless such person has a valid driver's license").

[6] *Coker*, supra at 647 (2). OCGA § 40-1-1 (33) defines "motor vehicle" to include "every vehicle which is self-propelled other than an electric personal assistive mobility device (EPAMD)."

[7] "Motorized carts" are defined at OCGA § 40-1-1 (32); the provisions specifically applying to them are found at OCGA §§ 40-6-330 and 40-6-331.

[8] (Citations omitted.) *Coker*, supra.

Similarly, even if a golf cart may qualify as an "off-road vehicle," nothing in the off-road vehicle statutes exempts the drivers of such from the scope of OCGA § 40-6-391 (a). The off-road vehicle statutes provide that off-road vehicles may not be operated without operative brakes and mufflers, nor may they be operated on private property without the owner's permission.[9] These restrictions govern the off-road vehicle itself, not the driver.[10] The driver is still obligated under the law of Georgia to avoid violating the DUI statute.

It was stipulated below that Simmons was driving this vehicle, making it a "moving vehicle" within the scope of the DUI statute; that she was under the influence of alcohol while she was driving the vehicle; and that this incident occurred in Fayette County. Under OCGA § 40-6-3 (a) (3),[11] the provisions of OCGA § 40-6-391 apply anywhere in Georgia, whether on a street, highway, or private property.[12]

The conviction is affirmed.

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED AUGUST 23, 2006.

*George C. Creal, Jr.,* for appellant.

*Jamie K. Inagawa, Solicitor-General, Joseph B. Myers, Jr., Assistant Solicitor-General,* for appellee.

---

[9] OCGA § 40-7-4.

[10] See *Coker,* supra at 647-648 (2) ("[s]uch operating standards . . . obviously refer to the manner in which [motorized carts] may be operated, not to whether the drivers of such must be licensed").

[11] OCGA § 40-6-3 (a) (3) ("The provisions of this chapter relating to . . . driving in violation of Code Section 40-6-391 . . . shall apply to vehicles operated upon highways *and elsewhere throughout the state*") (emphasis supplied).

[12] See, e.g., *Madden v. State,* 252 Ga. App. 164, 166 (2) (555 SE2d 832) (2001) (the DUI statute "draws no distinction between driving on public roads versus private thoroughfares"; further, the fact that the act was committed on private property does not give immunity from prosecution for this crime; *Jones,* supra ("the scope of the [DUI statute] is not limited to highways, . . . but applies elsewhere throughout the state") (citation omitted).