### A08A1555. GOETHE v. THE STATE.
(668 SE2d 859)

BARNES, Chief Judge.

Jeremy Goethe appeals from his conviction of speeding and driving with an alcohol concentration greater than 0.08 grams (OCGA § 40-6-391 (a) (5)). Goethe contends the trial court erred in charging the jury with part of OCGA § 40-6-392 (a) (1), which deals with the foundational requirements for the admissibility of scientific evidence in DUI cases, and by charging the jury that breath-alcohol measuring equipment approved by the State Crime Lab is considered accurate if properly operated. In addition, Goethe contends the trial court committed plain error by charging the jury on the issue of intent regarding a strict liability offense. Finding no reversible error, we affirm Goethe's convictions.

Goethe was stopped for speeding. After field sobriety evaluations were conducted, he consented to a breath test. After the test revealed a blood-alcohol level of 0.143, Goethe was arrested and charged with driving under the influence (less safe) (OCGA § 40-6-391 (a) (1)), driving under the influence (per se) (OCGA § 40-6-391 (a) (5)), and two counts of speeding. At trial, Goethe presented evidence to show that the Intoxilyzer 5000, the machine used by law enforcement to measure his blood-alcohol content, is prone to malfunction in that it

---

misreads alcohol levels under certain particular circumstances. According to Goethe, the malfunction occurs when the machine senses acetaldehyde, a natural metabolite of alcohol, on the breath the morning after drinking and adds the acetaldehyde reading to any actual alcohol reading, resulting in a false high positive test result. Goethe alleged these particular circumstances existed when he was tested for alcohol.

In turn, the State presented evidence that the acetaldehyde naturally found in Goethe's system could not have interfered with the test results because the Intoxilyzer 5000 was not designed to produce a response for acetaldehyde. Furthermore, the State argued that even if the computer sensed another substance besides alcohol, the machine would have produced a message on the results card that an interferent was detected. Goethe did not argue that the Intoxilyzer was improperly operated; rather, the focus of his argument was on an internal malfunction of the machine itself. Goethe was convicted of DUI per se and two counts of speeding. This appeal followed.

1. First, we address Goethe's contention that the trial court erred in charging the jury with the following instruction:

> The Division of Forensic Sciences and the Georgia Bureau of Investigation has the authority and responsibility to approve the methods in conducting a chemical analysis for alcohol and drug content. Such a test must be given by an individual who possesses a valid permit issued by the Division of Forensic Sciences. For the purpose of performing such a test there is no requirement that the Intoxilyzer operator be an expert on the principles of the machine's internal workings.

Goethe argues that this language is part of OCGA § 40-6-392 (a) (1), which deals with the foundational requirements for the admissibility of scientific evidence in DUI cases and is inappropriate as a charge to the jury because admissibility is never a question for the jury. He argues that the language complained of could be reasonably understood as creating a burden-shifting presumption that relieves the State of its burden of proof. We disagree.

In *Burke v. State*, 233 Ga. App. 778, 779 (3) (505 SE2d 528) (1998), which Goethe cites in support of his argument, this court held that "[t]he determination of whether evidence should be admitted pursuant to OCGA § 40-6-392 (a) (1) (A) is never a jury question." (Citation omitted.) Here, the trial court did not ask the jury to make a determination on the admissibility of the evidence. The instruction is a clear statement of the procedural safeguards

set up by the legislature to minimize the possibility of erroneous test results, and echos what our Supreme Court has previously recognized: that breath test results are admissible when the statutory foundation requirements are met. *Lattarulo v. State*, 261 Ga. 124, 126 (3) (401 SE2d 516) (1991).

Goethe argues next that this language could have been misunderstood by the jury as being a conclusive statement, in that, if the breath test is administered by an individual possessing a valid permit issued by the Department of Forensic Sciences, then the State's breath test result is accurate. We find no merit to this argument. This charge was given to the jury because evidence was presented by both sides on the use of the Intoxilyzer 5000 as equipment measuring alcohol in the breath and the overall reliability of results produced by the machine. The charge in no way nullified Goethe's defense that the equipment under certain circumstances produces a false positive result.

The jury charge given by the court was an accurate reflection of the law.[1] The charge essentially informed the jury that the person administering the test has received some level of training, for which a permit is issued; and that possession of such a permit does not imply that the operator is somehow an expert on the science applied to the machine's functioning, nor is the operator required to be such an expert to administer a breath test using this machine.

2. In his second enumeration of error Goethe contends the trial court erred in giving the following jury instruction: "I charge you that breath alcohol measuring equipment approved by the State Crime Lab is considered accurate if properly operated." Goethe argues that this instruction constituted an expression of the court's opinion, which in effect relieved the State of its burden of proof by setting up a mandatory presumption. We disagree.

The language used by the trial court in its instruction to the jury embodies a proper statement of the law and has been upheld in many

---

[1] OCGA § 40-6-392 (a) (1) (A):

Chemical analysis of the person's blood, urine, breath, or other bodily substance, to be considered valid under this Code section, shall have been performed according to methods approved by the Division of Forensic Sciences of the Georgia Bureau of Investigation on a machine which was operated with all its electronic and operating components prescribed by its manufacturer properly attached and in good working order and by an individual possessing a valid permit issued by the Division of Forensic Sciences for this purpose. The Division of Forensic Sciences of the Georgia Bureau of Investigation shall approve satisfactory techniques or methods to ascertain the qualifications and competence of individuals to conduct analyses and to issue permits, along with requirements for properly operating and maintaining any testing instruments, and to issue certificates certifying that instruments have met those requirements, which certificates and permits shall be subject to termination or revocation at the discretion of the Division of Forensic Sciences.

cases before this one, as language which simply informs the jury that the equipment used by law enforcement in measuring blood-alcohol content is considered accurate in general. See *Henson v. State*, 168 Ga. App. 210, 214 (4) (308 SE2d 555) (1983) (Court explanation to the jurors that an "auto-intoximeter" or similar device furnished by the State Crime Lab is considered accurate if properly operated was "no more than an explanation of the statute"); *Shipman v. State*, 221 Ga. App. 160, 161 (3) (471 SE2d 225) (1996) (charge on the accuracy of the intoximeter machine was proper); *Johnson v. State*, 231 Ga. App. 215, 216 (498 SE2d 778) (1998) (this instruction does not invade the province of the jury or shift the burden); *Campbell v. State*, 248 Ga. App. 162, 166-167 (3) (545 SE2d 6) (2001) (no irrebuttable evidentiary presumption when trial court charged the jury that breath alcohol measuring equipment approved by the state crime laboratory is considered accurate if it is properly used); *Thrasher v. State*, 292 Ga. App. 566, 574 (6) (666 SE2d 28) (2008) (challenged instruction is a correct statement of the law).

Furthermore, "[i]t is a fundamental rule in Georgia that jury instructions must be read and considered as a whole in determining whether the charge contained error." (Citation and punctuation omitted.) *Hambrick v. State*, 256 Ga. 688, 690 (3) (353 SE2d 177) (1987). It is well established that "[a]n accused may always introduce evidence of the possibility of error or circumstances that might have caused the machine to malfunction." *Lattarulo v. State*, supra, 261 Ga. at 126 (3). Reviewing the trial court's instructions to the jury reveals that neither this isolated charge, nor the charge as a whole, shifted the burden of proof on any issue to Goethe. The trial court pointed out the burden of proof always rests on the State, instructing the jury that "[t]he burden of proof rests upon the State to prove every material allegation of the accusation and every essential element of the crimes charged beyond a reasonable doubt," and that "the jury may always consider evidence of the possibility of error or circumstances that might have caused the machine to malfunction." The court also instructed the jury that "while the State's breath test may give rise to an inference that the Defendant's alcohol concentration violated the law at the time alleged, you are not required to so find." We find no error.

3. Finally, Goethe contends that the trial court committed plain error by charging the jury that "[i]t is not necessary that the Defendant actually know he is violating the law. The State is not required to prove the defendant intended to be driving under the influence of alcohol, nor even that he knew that he was doing so."

Pretermitting whether the trial court erred in using the aforementioned language, jury instructions must be read and considered as a whole in determining whether the charge contained error.

*Hambrick*, supra, 256 Ga. at 688, 690 (3). Here, viewed in its entirety, the trial court's charge was proper. The trial court instructed the jury that criminal intent had to be proved by the State in every prosecution and that criminal intent did not mean an intention to violate the law or to violate a penal statute, but simply meant "the intent to do the act which results in a violation of the law."

> The charge in its entirety was abundantly clear as to who had the burden of proof and what must be proven to carry the burden. . . . This . . . phrase within an otherwise correct statement of law could not have misled the jury where they had previously heard the correct rule over and over again. Considering the charge, it is clear to us the jury was instructed that the State had the burden of proving every element of the crime beyond a reasonable doubt.

(Citations and punctuation omitted.) *Hoffer v. State*, 192 Ga. App. 378, 381-382 (2) (384 SE2d 902) (1989).

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED OCTOBER 24, 2008.

*Billy L. Spruell, Melinda D. Taylor*, for appellant.
*Robert D. James, Jr., Solicitor-General, Angelique B. McClendon, Assistant Solicitor-General*, for appellee.