A09A1674. DUPREL v. THE STATE.
(687 SE2d 863)

MIKELL, Judge.

After a jury trial, John Michael Duprel was convicted of driving under the influence per se (DUI) and driving under the influence to the extent that he was less safe (DUI less safe) and sentenced to serve 12 months, 90 days of which were served in confinement and the remainder on probation. On appeal, Duprel charges that the trial court erred when it: (1) erroneously admitted similar transaction evidence; (2) improperly charged the jury; and (3) denied his motion to suppress. We find no error and affirm.

> On appeal from a criminal conviction, we view the evidence in a light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.[1]

So viewed, the record shows that at approximately 2:30 a.m. on February 17, 2008, Sergeant Freeman Morrison of the City of Holly Springs Police Department stopped at a QT gas station while patrolling the area in his squad car. Morrison testified that the QT is in the city limits of Holly Springs, but the property upon which the store sits falls under the jurisdiction of the Cherokee County Sheriff's Office. While sitting at the station, Morrison saw Duprel "revving" the engine of his motorcycle and driving around the

---

[34] See *Barker*, 407 U. S. at 536 (V); *Harris*, 284 Ga. at 457; *Williams*, 277 Ga. at 599-601 (1).

[1] (Citations omitted.) *Al-Amin v. State*, 278 Ga. 74 (1) (597 SE2d 332) (2004).

parking lot. Morrison summoned Duprel because he wanted to ask him not to "rev" his engine at that time of night. When Duprel saw Morrison's gesture, he "revved" the engine once more then turned it off and walked the bike over to Morrison. Morrison smelled a strong odor of alcohol on Duprel's breath and person, observed that his eyes were bloodshot and glassy and that his speech was heavy and slurred.

According to Morrison, he asked Duprel if he had been drinking and Duprel admitted that he had been, at which point Morrison called dispatch to send a deputy sheriff out to evaluate Duprel to determine if he could drive home safely. Morrison testified that Duprel placed his bike on its kickstand and then staggered over to the curb and sat down; that Duprel asked if he could ride home on the back of another rider's bike; and that he told Duprel that he could not because he would be endangering his own safety and that of the other rider.

Deputy John Wiederhold of the Cherokee County Sheriff's Office testified that when he arrived on the scene, Morrison told him what he had observed. Wiederhold approached Duprel and noticed his bloodshot, glassy eyes and a strong odor of alcohol emanating from his person. Once Duprel stood up, Wiederhold also noticed that Duprel swayed back and forth. Duprel told Wiederhold that he had been at a local bar and had consumed six beers over the last four hours. Wiederhold testified that he suspected that Duprel was impaired at that point and asked Duprel to submit to field sobriety testing, which included the horizontal gaze nystagmus ("HGN"), walk and turn, and one leg stand tests.

Wiederhold thoroughly explained how each test is to be conducted and testified that he had performed each test hundreds of times. Wiederhold observed six out of six clues of impairment during the HGN test, and testified that Duprel did not perform the walk and turn or one leg stand evaluations properly. After completing the tests, Wiederhold arrested Duprel for DUI. The entire investigation was videotaped, and the tape was played for the jury. Deputy Ryan Brooks testified that he administered the Intoxilyzer 5000 examination to Duprel and that Duprel's breath alcohol readings were 0.132 and 0.134.

1. In his first enumeration of error, Duprel argues that the trial court erroneously admitted a prior DUI conviction because there was no evidence that he committed the independent offense and because the transactions were not sufficiently similar. We disagree.

Before allowing the introduction of evidence of a similar transaction, a trial court must hold a hearing pursuant to Uniform Superior Court Rule 31.3. At that hearing, the

[s]tate must make three showings in order for the evidence to be introduced: (1) that it seeks to introduce the evidence for an appropriate purpose; (2) that there is sufficient evidence to show that the accused committed the independent offense or act; and (3) that there is a sufficient connection or similarity between the independent offense or act and the crime charged such that proof of the former tends to prove the latter. A trial court's decision to admit similar transaction evidence will be upheld on appeal unless it is clearly erroneous.[2]

In the instant case, Duprel argues that the state did not make the second and third showings.

Duprel argues that the evidence did not sufficiently establish that he committed the independent offense because Officer David Maguire, the arresting officer in the purported similar transaction, testified that he remembered Duprel's name from his report but never identified him at trial. However, the record shows that Maguire testified that he arrested "John Michael Dubrel" [sic] and that the state introduced into evidence the citation from the prior offense, which contained the same driver's license number for Duprel as was listed on the Intoxilyzer test slip that was introduced into evidence in the instant case. In light of this evidence, we conclude that the trial court's finding that the state presented sufficient evidence that Duprel committed the independent offense was not clearly erroneous.[3]

In addition, the trial court did not err in finding that the incidents were sufficiently similar.

In reviewing whether there were sufficient similarities to create a connection between the previous crime and the instant crimes such that the former tends to prove the latter, we focus on the similarities rather than the dissimilarities. Similar transactions need not be identical to the offense being tried but must show sufficient similarity or connection between the independent incidents and the offense at issue.[4]

Duprel maintains that the facts of the independent offense were

---

[2] (Citations and punctuation omitted.) *Cromartie v. State*, 275 Ga. App. 209, 211-212 (3) (620 SE2d 413) (2005).

[3] See *Williams v. State*, 261 Ga. 640, 643 (2) (d) (409 SE2d 649) (1991) (introduction of certified copy of conviction sufficient to establish the accused committed the independent act).

[4] (Citation and footnote omitted.) *Pinson v. State*, 266 Ga. App. 254, 257 (2) (596 SE2d 734) (2004).

materially different from the facts in the case sub judice. Duprel points to evidence that the independent offense involved a pickup truck that Duprel drove on a public street in violation of traffic laws, which conduct was observed by the officer, whereas the instant case involved a motorcycle on private property and the officer initially was concerned about a noise violation. However, we have held that

> the crime of driving under the influence is essentially committed under the same factual circumstances; that although the type of vehicle driven or the degree or source of intoxication may vary, the simple act of driving while under the influence establishes the commission of that crime; and that a prior act of driving while having that status or while in that condition is, regardless of any slight variance of circumstances, relevant to prove bent of mind or course of conduct.[5]

Here, in both instances, Duprel was operating a vehicle at night, while smelling of alcohol, and possessed a blood alcohol content that exceeded 0.10. Therefore, the trial court did not err in finding that the incidents were sufficiently similar.[6]

2. In his second, fourth, and fifth enumerated errors, Duprel objects to several of the jury charges. "In reviewing an allegedly erroneous jury instruction, this Court applies the plain legal error standard of review."[7] We find no error.

(a) The trial court charged:

> If in this case you find from the evidence that the arresting officer erred in the administration or interpretation of the field sobriety evaluations, that evidence is to be received by you, members of the jury, and given only such weight as you think it is properly entitle [sic] to receive in your considerations.

Duprel argues that the charge improperly shifted the burden of

---

[5] *Moran v. State*, 257 Ga. App. 236, 237 (1) (570 SE2d 673) (2002). See also *Lowenthal v. State*, 265 Ga. App. 266, 269 (1) (593 SE2d 726) (2004); *Kirkland v. State*, 206 Ga. App. 27, 28 (3) (424 SE2d 638) (1992).

[6] See *Evans v. State*, 287 Ga. App. 74, 76 (2) (651 SE2d 363) (2007) ("[e]vidence of a prior DUI offense, regardless of the circumstances surrounding its commission, is logically connected with a pending DUI charge as it is relevant to establish that the defendant has the bent of mind to get behind the wheel of a vehicle when it is less safe for him to do so") (footnote omitted); *Moran*, supra (evidence that defendant was driving the same car at night while emanating an odor of alcohol and having a blood alcohol content exceeding 0.10 rendered incidents sufficiently similar).

[7] (Citation and punctuation omitted.) *Johnson v. State*, 297 Ga. App. 341, 342 (677 SE2d 402) (2009).

proof, requiring him to prove that the tests were wrongly administered or analyzed. We disagree.

"[I]t is a fundamental rule in Georgia that jury instructions must be read and considered as a whole in determining whether the charge contained error."[8] The trial court pointed out that the burden of proof remains with the state, instructing the jury that

> [t]he burden of proof rests upon the state to prove every material allegation of the accusation, and every essential element of the crime charged beyond a reasonable doubt. There is no burden of proof upon the defendant whatsoever, and the burden never shifts to the defendant to introduce evidence or to prove innocence.

The first portion of the charge at issue, that field sobriety evaluations are subject to human error, seems to inure to the benefit of the defendant and was approved by this Court in *Howell v. State*.[9] In that case, the trial court charged the jury that "field sobriety evaluations, as with any other form of evaluation, may be subject to human error in their administration or interpretation, and the burden of showing such errors rests with the party who is challenging the weight of said evidence."[10] We concluded that the instruction did not relate to any element of the crime and did not shift the burden of proof to the defendant.[11] Likewise, here, the charge did not relate to any element of the offenses of DUI. Instead, it simply restated the well-established principle of law that the jury weighs the evidence; it did not shift the burden of proof to Duprel by telling the jury how to do so.[12] We note, too, that Duprel cross-examined the arresting officer about the manner in which he administered the sobriety tests, calling into question the validity of his findings. Thus, the charge was apt, adjusted to a principle involved in the case, and authorized by the evidence.[13] Accordingly, we find no error.

(b) Duprel argues that the trial court created ambiguity and confusion requiring the reversal of his conviction when it interchanged the word "anywhere" with the word "elsewhere" as utilized

---

[8] (Citation and punctuation omitted.) *Goethe v. State*, 294 Ga. App. 232, 235 (2) (668 SE2d 859) (2008).

[9] 266 Ga. App. 480, 486 (2) (597 SE2d 546) (2004).

[10] (Punctuation omitted.) Id.

[11] Id. at 487 (2).

[12] Compare *Davis v. State*, 236 Ga. App. 32, 34 (4) (510 SE2d 889) (1999) (jury charge that if defendant's alcohol concentration exceeded 0.08 grams or more, it should infer that the defendant was under the influence of alcohol, created a mandatory inference of guilt, impermissibly shifting the burden of proof).

[13] See *Davis v. State*, 285 Ga. 176, 178 (2) (674 SE2d 879) (2009).

in OCGA § 40-6-3 (a) (3). The statute provides that "[t]he provisions of this chapter relating to reckless driving, driving in violation of Code Section 40-6-391, and homicide by vehicle shall apply to vehicles operated upon highways and elsewhere throughout the state." The trial court charged that "driving under the influence less safe is defined as follows: It shall be unlawful for any person while under the influence of alcohol to drive or be in actual physical control of any moving vehicle anywhere within this state." The use of "anywhere" instead of "elsewhere" does not render the charge erroneous. "Under OCGA § 40-6-3 (a) (3), the provisions of OCGA § 40-6-391 apply anywhere in Georgia, whether on a street, highway, or private property."[14] As an aside, we find Duprel's complaint about the charge curious as this very principle is included in his request to charge no. 17.

(c) Duprel contends that the trial court erred when it refused to charge the jury on "attempted" driving under the influence. Duprel cites no authority that authorizes a charge on attempt to commit the offense of driving under the influence as a lesser included offense. Nonetheless, where "the evidence shows either the commission of the completed offense as charged, or the commission of no offense, the trial court is not required to charge the jury on a lesser included offense."[15] In the instant case, the evidence was sufficient to authorize Duprel's conviction.

3. Finally, Duprel argues that the trial court erred in denying his motion to suppress because the municipal officer, Morrison, placed him under arrest outside of his jurisdiction and did not have probable cause. Where, as here, the issue turns on the question of whether a trial court committed an error of law in denying a motion to suppress, we apply the de novo standard of review,[16] and we find no error.

Duprel cites OCGA § 40-13-30 for the proposition that municipal officers cannot make arrests outside of city limits unless jurisdiction is granted pursuant to a local or other law. It is true that

[a]s a general rule, a municipal police officer is authorized to investigate crimes and/or arrest suspects only for those infractions that occur within that officer's territorial jurisdiction. We have held, however, that an officer has authority to arrest a person accused of violating any law or ordinance governing the operation of a vehicle where the offense is

---

[14] (Footnotes omitted.) *Simmons v. State*, 281 Ga. App. 252, 254 (635 SE2d 849) (2006).

[15] (Citation and punctuation omitted.) *Lupoe v. State*, 284 Ga. 576, 577-578 (2) (669 SE2d 133) (2008).

[16] *Epps v. State*, 298 Ga. App. 607 (680 SE2d 636) (2009).

committed in his presence regardless of territorial limitations.[17]

This rule is codified at OCGA § 17-4-23 (a), which provides specifically that "[a] law enforcement officer may arrest a person accused of violating any law or ordinance governing the operation, licensing, registration, maintenance, or inspection of motor vehicles by the issuance of a citation, provided the offense is committed in his presence." Because Morrison had a reasonable suspicion that Duprel had been driving under the influence after he saw Duprel operating his motorcycle and Duprel admitted that he had been drinking, Morrison had authority to arrest Duprel.[18]

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED NOVEMBER 19, 2009 —
RECONSIDERATION DENIED DECEMBER 9, 2009.

*Weaver & Weaver, George W. Weaver, Barbara A. Sosebee*, for appellant.

*David L. Cannon, Jr., Solicitor-General, Carrie A. McCurdy, Assistant Solicitor-General*, for appellee.

---

[17] (Punctuation and footnotes omitted.) *Griffis v. State*, 295 Ga. App. 903, 904 (1) (673 SE2d 348) (2009). See generally *State v. Gehris*, 242 Ga. App. 384, 386 (528 SE2d 300) (2000) (municipal police officers do not relinquish their authority to investigate and to arrest a defendant for a crime involving a motor vehicle committed in their presence even if the assisting county police officer was available).

[18] We cannot discern from Duprel's brief whether his argument that Morrison had no probable cause to arrest Duprel is based solely on his position that Morrison lacked authority to arrest Duprel or rests on some other independent principle. To the extent that Duprel had any other basis for this contention, he submitted no argument or citation of authority in support thereof. Accordingly, the argument is waived as abandoned. See Court of Appeals Rule 25 (c) (2).