A07A0312. STEINBERG v. THE STATE.
(650 SE2d 268)

PHIPPS, Judge.

Lee Harvey Steinberg was charged with failure to maintain lane, driving under the influence of alcohol (DUI) less safe, and DUI per se. After his motion to suppress evidence was denied, Steinberg was found guilty of the DUI per se count and not guilty of the other counts. Appealing his conviction for DUI per se, Steinberg contends that the trial court erred by refusing to suppress evidence and refusing to provide the jury with two requested charges. Because Steinberg has failed to show any error, we affirm.

1. Steinberg contends that the trial court erred by refusing to suppress evidence in connection with the traffic stop, arguing that the traffic stop was unlawful.

When reviewing a trial court's decision on a motion to suppress, this court's responsibility is to ensure that there was a substantial basis for the decision. The evidence is construed most favorably to uphold the trial court's findings and judgment, and the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous. Further, since the trial court sits as the trier of

---

fact, its findings are analogous to a jury verdict and will not be disturbed if there is any evidence to support them.[1]

An officer may conduct a brief investigative stop of a vehicle if the stop is justified by specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. A court must consider whether, under the totality of the circumstances, the police officer had a particularized and objective basis for suspecting the particular person stopped of criminal activity. However, the stop of a vehicle is also authorized merely if the officer observed a traffic offense.[2]

At the motion hearing, the deputy sheriff who stopped Steinberg testified about his specialized DUI training. He further testified that at about 1:00 a.m. on September 12, 2004, he saw the driver's side tires of Steinberg's vehicle twice cross the centerline and therefore initiated a traffic stop. He turned on the patrol car's blue lights, which after about three seconds, activated the patrol car's video recorder. When the deputy sheriff approached Steinberg sitting in his vehicle, he informed Steinberg that he was stopped for failing to maintain his lane.

On appeal, Steinberg points out that the jury found him not guilty of this charge. The pertinent Code provision, OCGA § 40-6-48 (1), states, "A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." In addition, Steinberg points to his motion hearing testimony that his vehicle neither crossed nor touched the centerline. Steinberg also points to the video recording, which he asserts established that he was driving in a "normal and safe" manner and showed that there was no traffic around his vehicle during the pertinent time. Steinberg posits, "Therefore, [the deputy sheriff] did not observe [him] commit any traffic violation whatsoever that would give rise to a reasonable articulable suspicion of criminal activity that would justify the stop of [his] vehicle and the trial court erred in denying [his] motion to suppress."

While the facts were disputed in this case, the trial court found that Steinberg twice crossed the centerline. Because this finding was

---

[1] *Soilberry v. State*, 282 Ga. App. 161 (637 SE2d 861) (2006) (citation and punctuation omitted).

[2] *Jones v. State*, 259 Ga. App. 506, 507 (1) (578 SE2d 165) (2003) (citations, punctuation and footnotes omitted).

supported by the deputy sheriff's testimony, we adopt it as not clearly erroneous.[3] And this court has already held that "weaving without reason into nearby lanes violates OCGA § 40-6-48 (1) and justifies a stop."[4] Steinberg's assertion that the state failed to establish that he violated OCGA § 40-6-48 (1) because he posed no danger to other traffic is therefore unavailing.[5] Similarly, Steinberg's eventual acquittal of failure to maintain lane is not determinative of whether the traffic stop was lawful.[6] Accordingly, the trial court did not err in concluding that the deputy sheriff lawfully stopped Steinberg.[7]

2. Steinberg further contends that the trial court should have granted his motion to suppress because the deputy sheriff lacked probable cause to arrest him for DUI.

> The test of probable cause requires merely a probability — less than a certainty but more than a mere suspicion or possibility. To arrest a suspect for driving under the influence, an officer need only have knowledge or reasonably trustworthy information that the suspect was actually in physical control of a moving vehicle, while under the influence of alcohol to a degree which renders him incapable of driving safely.[8]

At the motion hearing, the deputy sheriff testified that, after informing Steinberg of the reason for the stop, he noticed a strong odor of an alcoholic beverage coming out of Steinberg's vehicle. When Steinberg complied with the deputy sheriff's request to step out of his vehicle, the deputy sheriff ascertained that the strong odor was being emanated from Steinberg's facial area. The deputy sheriff also observed that Steinberg's eyes were bloodshot. And Steinberg admitted to the deputy sheriff that he had consumed a couple of beers.

The deputy sheriff then administered several field sobriety tests to Steinberg. The deputy sheriff concluded that Steinberg exhibited six out of six clues during the horizontal gaze nystagmus test. Regarding the walk and turn test, the deputy sheriff recounted that

---

[3] See *Soilberry*, supra at 162 (1).

[4] *Rayo-Leon v. State*, 281 Ga. App. 74, 75 (1) (635 SE2d 368) (2006) (citations and punctuation omitted).

[5] See further *Davis v. State*, 236 Ga. App. 32, 33 (1) (510 SE2d 889) (1999) (behavior giving rise to reasonable suspicion need not be a violation of law; police can stop drivers driving in an erratic manner – even if simply weaving within a lane); see also *Semich v. State*, 234 Ga. App. 89, 91-92 (b) (506 SE2d 216) (1998).

[6] See *Allenbrand v. State*, 217 Ga. App. 609, 610 (1) (458 SE2d 382) (1995).

[7] See *Soilberry*, supra; *Rayo-Leon*, supra; *Davis*, supra; *Semich*, supra; *Worsham v. State*, 251 Ga. App. 774, 775-776 (554 SE2d 805) (2001).

[8] *Frederick v. State*, 270 Ga. App. 397, 398 (606 SE2d 615) (2004) (citation omitted).

Steinberg had started too soon, failed to touch heel to toe, stepped off the line, and turned incorrectly. The deputy sheriff testified that Steinberg had been unable to complete the one-leg stand test. Steinberg also refused to submit to an alco-sensor test. The deputy sheriff testified that he had formed an opinion that Steinberg had been driving under the influence of alcohol and therefore arrested him.

Given the evidence regarding the deputy sheriff's specialized DUI training, Steinberg's admission of ingesting alcohol, failure to maintain lane, bloodshot eyes, performances on several field sobriety tests, and the strong odor of alcohol emanating from Steinberg's facial area, we find no error in the trial court's determination that the deputy sheriff had probable cause to arrest Steinberg.[9]

3. Steinberg contends that the trial court erred by refusing to give the jury two instructions he timely submitted pertaining to blood test results.

The trial evidence showed that, after his arrest, Steinberg was transported to a hospital, where he submitted to a state-administered chemical test of his blood. The forensic toxicologist who performed the test was accepted at trial as an expert witness in testing blood. She described the procedure through which she had received Steinberg's blood sample and stated that she had received the sample with no indication of tampering. According to the forensic toxicologist, the method employed to test Steinberg's blood sample was approved by the Georgia Bureau of Investigation, Department of Forensic Sciences, for the purpose of determining alcohol content in a bodily substance. Likewise, the devices used in testing the sample were approved by that department and were in proper working condition at the time Steinberg's sample was tested. The forensic toxicologist testified that the test she conducted showed that Steinberg's sample contained 0.098 (plus or minus 0.003) grams of alcohol per 100 milliliters of blood.

Steinberg argues that, without the two specific charges he requested, the jurors were left with insufficient guidance to evaluate the blood tests results or the quality of the blood test chain of custody. He asserts further that, had the jurors been given these specific instructions, they would have known that they had the authority to disregard the blood test results.

The first such charge was:

The state has introduced the results of a test of the defendant's blood as evidence of the defendant's alcohol concentration. The court's admission of this evidence at trial is not

---

[9] See id.; *Cann-Hanson v. State*, 223 Ga. App. 690, 691 (1) (478 SE2d 460) (1996).

an expression of an opinion that the court views the state's test as conclusive on this issue. The burden remains on the state to prove the defendant was under the influence of alcohol beyond a reasonable doubt. No procedure is infallible. Even where a procedure in general use is based upon a scientific theory, it may have some margin for error and give an erroneous result under certain circumstances. Accordingly, while you may infer the state's blood test evidence is a correct measurement of the defendant's alcohol concentration beyond a reasonable doubt, you are not required to do so and may even decide to afford the state's blood test result no weight whatsoever. This is a matter entirely within your discretion as the finders of fact.

The second charge was:

In considering the "less safe" DUI charge under § 40-6-391 (a) (1), I charge you that even if you accept the accuracy of the state's blood testing of the defendant, no presumption of guilt is created thereby. It is only sufficient to indicate an alcohol concentration at the time blood was collected. Whether you make that inference is a matter entirely within your discretion as fact finders considering all of the other facts at your disposal, as you find them[,] the facts[,] to be.

"It is not reversible error to fail to charge in the exact language requested when the charge given adequately covers the correct legal principles."[10] Here, the trial court instructed the jury, "It is your responsibility to determine the facts of the case from all the evidence presented." The court gave the pattern jury instruction on the credibility of witnesses, which informed the jurors that, when passing on a witness's credibility, they may consider all the facts and circumstances of a case, including the witness's manner of testifying, his or her intelligence, his or her interest or lack of interest, his or her means and opportunity for knowing the facts, and the probability or improbability of his or her testimony.[11] The court gave the pattern jury instruction on expert witnesses, which stated that the weight that is given to the testimony of an expert witness is a question to be determined by the jury and that the jurors were not required to accept

---

[10] *Johnson v. State*, 276 Ga. 57, 60 (3) (573 SE2d 362) (2002) (citation and punctuation omitted).

[11] See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (3d ed.), Part 1.31.10.

the opinion testimony of any witness — expert or otherwise.[12] In addition, the trial court gave the pattern jury charge on the burden of proof, instructing the jurors,

> The burden of proof rests upon the state to prove every material allegation in the accusation and every essential element of the crime charged beyond a reasonable doubt. There is no burden of proof upon the defendant whatsoever, and the burden never shifts to the defendant to introduce evidence or to prove innocence.[13]

And the trial court charged the jury, "Now, by no ruling or comment that the Court has made during the progress of this trial has the Court intended to express any opinion upon the facts of this case, upon the credibility of the witnesses, upon the evidence, or upon the guilt or innocence of the defendant." Moreover, although Steinberg was acquitted on DUI less safe, we note that the trial court charged the jury that whether Steinberg was a less safe driver as a result of alcohol ingestion was a matter solely for its determination "even though a numeric blood alcohol level may have been introduced into evidence by the State as part of its evidence."

Because, in their totality, the charges given covered substantially and adequately the principles contained in the two requested instructions cited by Steinberg, the trial court did not err in refusing to give them in the exact language Steinberg requested.[14]

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED JUNE 25, 2007 —
RECONSIDERATION DENIED JULY 9, 2007 — ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮

*Head, Thomas, Webb & Willis, William C. Head*, for appellant.
*Leslie C. Abernathy, Solicitor-General, Amy Millard Radley, Assistant Solicitor-General*, for appellee.

---

[12] See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (3d ed.), Part 1.31.30.
[13] See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (3d ed.), Part 1.20.10.
[14] See *Johnson*, supra; *Parker v. State*, 270 Ga. 256, 258 (2) (507 SE2d 744) (1998).