## A10A1605. PARKER v. THE STATE.
(704 SE2d 438)

DOYLE, Judge.

Following a jury trial, Judy Michelle Parker appeals from her conviction of DUI per se,[1] contending that the trial court erred by (1) ruling that the initial traffic stop was authorized, (2) admitting evidence of a horizontal gaze nystagmus ("HGN") test, (3) admitting evidence of subsequent roadside sobriety tests performed without a *Miranda*[2] warning, and (4) finding that the arresting officer had probable cause to arrest her. For the reasons that follow, we affirm.

Construed in favor of the verdict,[3] the evidence shows that shortly after midnight one morning in May 2008, an officer in a marked patrol car was traveling on a state route when he was cut off by Parker, who abruptly changed lanes in front of him without signaling, requiring the officer to quickly apply his brakes. After waiting for a safe opportunity, the officer turned on his blue lights and executed a traffic stop.

The officer made contact with Parker, immediately smelled a strong odor of alcohol on her breath, and asked her where she had come from. Parker explained that she was driving from a restaurant where she had split "a pitcher or two" of beer with a friend. The officer asked Parker if she would perform some field sobriety evaluations, and she agreed. The officer performed a HGN test, noting six out of six clues of impairment; a walk-and-turn test, noting five out of eight clues of impairment; a one-leg-stand test, noting two out of four clues of impairment; and an alco-sensor test, which registered positive for alcohol consumption. Based on his observations, the officer advised Parker that she was under arrest and placed her in handcuffs.

After the officer read her the implied consent warning at the roadside, Parker elected to take a breath test, which was later performed at the sheriff's department on an Intoxilyzer 5000. That test, which was performed within three hours of Parker's driving, resulted in two 0.101 readings for blood alcohol concentration.

Parker was charged with one count of DUI per se, one count of DUI less safe, and improper lane change. A jury found her guilty of

---

[1] OCGA § 40-6-391 (a) (5).

[2] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1996).

[3] See *Guyton v. State*, 281 Ga. 789 (1) (642 SE2d 67) (2007).

the DUI per se count, and acquitted her of the other counts. Following the denial of her motion for new trial, she filed this appeal.

1. Parker contends that the trial court erred by ruling that the arresting officer had sufficient suspicion to execute the initial traffic stop. We disagree.

"[A] brief investigatory stop of a vehicle is justified by specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct. 'Reasonable suspicion' is a less demanding standard than probable cause."[4] Observing even a minor traffic violation authorizes an officer to stop a vehicle.[5]

Here, the officer testified at the suppression hearing that he observed Parker change lanes by cutting him off in a manner he believed to be unsafe, causing him to abruptly apply his brakes. OCGA § 40-6-123 (a) provides that "[n]o person shall . . . change lanes or move right or left upon a roadway unless and until such movement can be made with reasonable safety." In light of the officer's testimony, the trial court was authorized to find that the traffic stop was justified by specific articulable facts giving the officer a reasonable suspicion of a traffic violation, i.e., changing lanes without reasonable safety. That Parker was ultimately acquitted of that offense is of no moment. "If an officer in good faith believes that an unlawful act has been committed, his actions are not rendered improper by a later determination that the conduct observed was not a crime."[6]

2. Parker next contends that the trial court erred by denying her motion to suppress evidence from the HGN test because the "smooth pursuit" portion of the test was performed improperly. Because the record supports a finding that the officer substantially performed the HGN test in an acceptable manner, we discern no error.

> [T]he trial court sits as the trier of fact when ruling on a motion to suppress or a motion in limine, [and] its findings based upon conflicting evidence are analogous to a jury verdict and should not be disturbed by a reviewing court if there is any evidence to support them. When we review a trial court's decision on such motions to exclude evidence, we construe the evidence most favorably to uphold the findings and judgment, and we adopt the trial court's findings on disputed facts and credibility unless they

---

[4] (Citation and punctuation omitted.) *State v. Jones*, 287 Ga. App. 259, 260 (651 SE2d 186) (2007).

[5] See *Wright v. State*, 272 Ga. App. 423, 427 (2) (612 SE2d 576) (2005).

[6] *Swearingen v. State*, 255 Ga. App. 85, 86 (1) (564 SE2d 498) (2002). See *State v. Armstrong*, 223 Ga. App. 350, 352 (2) (477 SE2d 635) (1996).

are clearly erroneous. When the evidence is uncontroverted and no question of witness credibility is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review. With mixed questions of fact and law, the appellate court accepts the trial court's findings on disputed facts and witness credibility unless clearly erroneous, but independently applies the legal principles to the facts.[7]

The admissibility of evidence based on a scientific principle or technique such as the HGN test is analyzed as follows: "the party offering the evidence [must show] that (1) the general scientific principles and techniques involved are valid and capable of producing reliable results, and (2) the person performing the test substantially performed the scientific procedures in an acceptable manner."[8] With respect to the first prong, "[i]n *Harper v. State*,[9] the Supreme Court of Georgia explained that evidence based on a scientific principle or technique is admissible only if the science underlying the evidence is a phenomenon that may be verified with such certainty that it is competent evidence in a court of law."[10]

Parker correctly concedes that the first prong was met here because "the HGN test is an accepted, common procedure that has reached a state of verifiable certainty in the scientific community meeting the *Harper v. State* standard and is admissible as a basis upon which an officer can determine that a driver was impaired by alcohol."[11] Nevertheless, Parker challenges the second prong, i.e., whether the State demonstrated that the officer substantially performed the HGN test in an acceptable manner.

In ruling on whether an HGN test was administered properly under law enforcement guidelines, our courts have considered whether the arresting officer was sufficiently trained to give the test, whether the officer was experienced in administering the test, whether the officer administered the test according to the standardized techniques, and whether the officer scored or interpreted the test properly.[12]

When making this showing, the State may have the officer testify

---

[7] (Citations and punctuation omitted.) *State v. Tousley*, 271 Ga. App. 874 (611 SE2d 139) (2005).

[8] (Punctuation and footnote omitted.) Id. at 876 (1) (a).

[9] 249 Ga. 519 (292 SE2d 389) (1982).

[10] (Punctuation omitted.) *Tousley*, 271 Ga. App. at 877 (1) (a).

[11] (Punctuation omitted.) Id. at 878 (1) (b) (i).

[12] Id. at 879 (1) (b) (ii).

both as a fact witness and an expert, as was done here.[13]

According to the officer's testimony, the HGN test is composed of a baseline observation to qualify the subject for evaluation (resting nystagmus and equal tracking) and three evaluative components: smooth pursuit, sustained nystagmus at maximum deviation, and the degree of deviation at which the onset of nystagmus occurs. Specifically, Parker challenges the smooth pursuit component and relies on the officer's testimony on cross-examination that his performance of that part of the test was "a little quick." The officer otherwise testified that Parker was appropriately qualified as a subject, the other evaluative components were performed correctly, and she exhibited six out of six clues for impairment. The officer also testified as to his training and experience in administering the HGN test, including having advanced training in detecting alcohol impairment and several hundred occasions of having administered the HGN test in the field.

The smooth pursuit component of the HGN test accounted for two out of the six possible clues of impairment,[14] and the record supports a finding that no other flaws occurred with respect to the qualification portion and the other four clues of impairment. "Under law enforcement guidelines, a score of four out of six clues on an HGN test constitutes evidence of impairment."[15] Based on the record before us, we conclude that performing one of the three evaluative components "a little quick[ly]" did not render the entire test inadmissible.[16] Absent a fundamental error, such as one affecting the subject's qualification for the HGN test,[17] "evidence of the possibility of error goes only to the weight of the test results, not to their admissibility."[18] Further, the officer's testimony was limited to stating only that Parker's performance exhibited "a level of impairment."[19] Accordingly, the trial court did not err by denying the motion to suppress.[20]

3. Parker next contends that the trial court erred by failing to suppress evidence from the field sobriety tests performed at the

---

[13] See id.

[14] See, e.g., *Laseter v. State*, 294 Ga. App. 12, 15 (1) (668 SE2d 495) (2008).

[15] *Tousley*, 271 Ga. App. at 880 (1) (b) (ii).

[16] See id. at 880 (1) (b) (ii).

[17] Compare *Sultan v. State*, 289 Ga. App. 405, 408 (1) (657 SE2d 311) (2008) (HGN test inadmissible "because the officer failed to qualify [the defendant] as a suitable subject").

[18] *Duncan v. State*, 305 Ga. App. 268, 272 (2) (a) (699 SE2d 341) (2010). See also *Tousley*, 271 Ga. App. at 881 (1) (c).

[19] Compare *Bravo v. State*, 304 Ga. App. 243, 248 (1) (696 SE2d 79) (2010) (HGN not recognized in court as a sufficiently certain method to determine a precise blood alcohol concentration).

[20] See *Tousley*, 271 Ga. App. at 879 (1) (b) (ii).

roadside after the HGN test because she was not given a *Miranda* warning before completing those tests. This argument fails because Parker was not under arrest when the sobriety tests were given.

The requirement to give a *Miranda* warning does not apply until a person is actually in custody "or otherwise deprived of [her] freedom of action in some significant way."[21] In making this determination,

> a court must examine all of the circumstances surrounding the interrogation, but the ultimate inquiry is simply whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. The test for determining whether a person is "in custody" at a traffic stop is if a reasonable person in the *suspect's* position would have thought the detention would not be temporary.[22] The issue of whether one is in custody for *Miranda* purposes is a mixed question of law and fact, and we will not disturb the trial court's determination unless it is clearly erroneous.[23]

Here, the arresting officer testified that the field sobriety tests were conducted in a parking lot, and Parker stood freely outside of her vehicle during the tests. Parker voluntarily performed the sobriety tests at the request of the officer, who did not place Parker in handcuffs or otherwise restrict her movements until after he told her that he believed she was impaired and after she had completed the sobriety tests. "It is well established that *Miranda* warnings are not required while an investigating officer conducts preliminary questioning or field sobriety tests, but apply only after a DUI suspect is arrested."[24] Based on the circumstances here, the trial court was authorized to find that Parker was not "in custody" for *Miranda* purposes until after the field sobriety tests were performed.[25] Therefore, admitting evidence from pre-*Miranda* field sobriety tests was not erroneous.[26]

---

[21] (Punctuation omitted.) *Brown v. State*, 299 Ga. App. 402, 404 (1) (683 SE2d 614) (2009).

[22] The officer's subjective belief of whether the subject is intoxicated is not relevant to the inquiry at this stage unless this belief is manifested in a way that would make a person in the suspect's position think that the detention is not temporary. See, e.g., *State v. Foster*, 255 Ga. App. 704, 705-706 (566 SE2d 418) (2002). There is no evidence of such a manifestation here.

[23] (Citation and punctuation omitted.) *Brown*, 299 Ga. App. at 404 (1).

[24] Id.

[25] See id. at 405 (1); *Foster*, 255 Ga. App. at 706.

[26] See *Polizzotto v. State*, 248 Ga. App. 814, 817 (1) (547 SE2d 390) (2001).

4. Finally, Parker contends that the arresting officer lacked probable cause to arrest her. "The test of probable cause requires merely a probability [of unlawful behavior] — less than a certainty but more than a mere suspicion or possibility."[27] Based on our holdings herein, Parker's argument fails because, as explained by the trained and experienced officer, he believed Parker was "over the limit," and there was evidence to support findings that Parker performed a dangerous lane change; had watery and bloodshot eyes; admitted having consumed "a pitcher or two" of beer with a friend; had a positive alco-sensor test; and exhibited a level of impairment based on her performance on the HGN, walk-and-turn, and one-leg-stand field sobriety tests. These facts were sufficient to give the officer probable cause to believe that Parker had committed a DUI violation.[28]

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED NOVEMBER 23, 2010.

*Philip P. Pilgrim, Jr.*, for appellant.
*Rosanna M. Szabo, Solicitor-General, Richard C. Armond, Assistant Solicitor-General*, for appellee.

---

[27] (Punctuation omitted.) *Steinberg v. State*, 286 Ga. App. 417, 419 (2) (650 SE2d 268) (2007).

[28] See *Jaffray v. State*, 306 Ga. App. 469 (702 SE2d 742) (2010); *Steinberg*, 286 Ga. App. at 419-420 (2); *Frederick v. State*, 270 Ga. App. 397, 398 (606 SE2d 615) (2004) ("even without the field sobriety tests, the experienced officer's undisputed testimony that [the defendant] smelled of alcohol, admitted that he had been drinking, and had glossy eyes sufficed to create probable cause for the arrest").