**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 3, 2013**

# In the Court of Appeals of Georgia

A13A0397. JOHNSON, JR. v. THE STATE.                              DO-016 C

DOYLE, Presiding Judge.

After a jury trial, William Holland Johnson, Jr., was found guilty of driving under the influence of alcohol such that he was less safe to do so ("DUI - less safe"),[1] and improper lane change.[2] Johnson appeals, arguing that the trial court erred by (1) denying his motion to exclude evidence of the horizontal gaze nystagmus ("HGN") test based on the standard stated in *Sultan v. State*[3]; (2) denying four of his jury

---

[1] OCGA § 40-6-391 (a) (1).

[2] OCGA § 40-6-123 (b).

[3] 289 Ga. App. 405, 407 (1) (657 SE2d 311) (2008).

charge requests; and (3) admitting evidence of his recorded post-arrest statements. For the reasons that follow, we affirm.[4]

Viewed in the light most favorable to the verdict,[5] the record shows that on January 2, 2010, at approximately 11:40 p.m., an officer was patrolling an area of Forsyth County. The officer was traveling in the left-hand lane of a 4-lane road and was approximately 50 to 100 feet behind a gray sport utility vehicle ("SUV"), which was traveling in a right-hand lane that would eventually become a right-turn-only lane. The officer was concerned that the SUV was traveling too quickly to negotiate the right-hand turn and therefore slowed his vehicle to avoid any accident or abrupt lane change; as the officer expected and without using the left-hand turn signal, the SUV moved into the left-hand lane in order to continue straight through the intersection. Immediately after the intersection, there was a gas station, and the road had a turn lane for entering the gas station parking lot, which was separated from the main lane of travel by a white-striped portion of pavement. The SUV then turned into

---

[4] We note that while the State cites *Sulton v. State* in its brief on appeal, its legal analysis is otherwise limited to a recitation of the standard of review. Because we are required to address every issue raised on appeal, specific direction to the relevant facts and the controlling authority, along with an explanation of how the law relates to the relevant facts, would be more helpful.

[5] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

the gas station from the left-hand lane, without signaling, without entering the right-hand turn lane, and instead driving over the white striped area of pavement.

After driving into the parking lot, the SUV then looped back around to the road, and signaled before making a left-hand turn back in the direction it had come in the first place. The officer followed the SUV through the parking lot, and then executed a traffic stop after the SUV pulled back onto the road. After the officer activated his lights, the vehicle pulled into another lot, parking crookedly across two spots, and the officer approached the driver, Johnson.

Upon approaching Johnson, the officer noticed the very strong odor of an alcoholic beverage coming from him and his vehicle, and Johnson's eyes were bloodshot. Johnson's speech was normal, however, the officer concluded that the odor of alcohol was emanating from his person after he exited the vehicle. Johnson stated that he had two drinks earlier in the evening, had begun drinking about ninety minutes prior to the stop, and his last drink was about thirty minutes prior to the stop; Johnson then clarified that he had ingested two beers and one glass of wine. The officer performed field sobriety tests on Johnson, who stated that he was not on any medication and did not have any physical ailments that would affect his performance on the evaluations.

The officer administered the HGN test, the one-legged stand, and the alphabet test, but Johnson refused to provide a preliminary breath test in the officer's alco-sensor. After medically qualifying Johnson, the officer performed the HGN test, which he had conducted on "thousands" of individuals, and he detected six out of six clues of impairment. Based on his observation of Johnson's driving, as well as his observation of his physical presentation and Johnson's performance on the field sobriety tests, the officer arrested Johnson for DUI - less safe.

At trial, the State presented to the jury a copy of the officer's dashboard video. Additionally, the officer's patrol car had an audio recording device activated when he arrested Johnson, and the recording captured Johnson stating to himself, "I'm really f---ed. I mean, I'm really, really, really, really f---ed." while in the back of the car.

1. Johnson argues that the trial court erred by denying his motion to exclude evidence of the HGN test because the officer improperly performed the test. We disagree.

> The trial court sits as the trier of fact when ruling on a motion to suppress or a motion in limine, and its findings based upon conflicting evidence are analogous to a jury verdict and should not be disturbed by a reviewing court if there is any evidence to support them. When we

review a trial court's decision on such motions to exclude evidence, we construe the evidence most favorably to uphold the findings and judgment, and we adopt the trial court's findings on disputed facts and credibility unless they are clearly erroneous. When the evidence is uncontroverted and no question of witness credibility is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review. With mixed questions of fact and law, the appellate court accepts the trial court's findings on disputed facts and witness credibility unless clearly erroneous, but independently applies the legal principles to the facts.[6]

Evidence of a defendant's performance on an HGN test is considered to be evidence based on a scientific principle or technique. Such evidence is admissible upon a showing by the party offering the evidence that (1) the general scientific principles and techniques involved are valid and capable of producing reliable results, and (2) the person performing the test *substantially performed* the scientific procedures in an acceptable manner.[7]

Johnson contends that pursuant to *Sultan*, the trial court should have excluded the results of his HGN test or instructed the jury to disregard those results based on the testimony of his expert witness, who stated that the officer performed the equal

---

[6] (Punctuation omitted.) *Parker v. State*, 307 Ga. App. 61, 62-63 (2) (704 SE2d 438) (2010), quoting *State v. Tousley*, 271 Ga. App. 874 (611 SE2d 139) (2005).

[7] (Punctuation omitted; emphasis supplied.) *Sultan*, 289 Ga. App. at 407 (1).

tracking portion of the test "too quick." In *Sultan*, however, "[t]he officer testified that *he probably did not perform the equal tracking portion* of the HGN test . . . ."[8] Because the officer in *Sultan* completely failed to medically qualify the defendant prior to performing the HGN test, this Court held that the results of the test were not admissible because the test was not substantially performed in an acceptable manner.[9]

In this case, on the other hand, the officer testified that he appropriately performed the equal tracking portion of the HGN test, that Johnson was qualified to have the test administered to him, and that he appropriately performed the remaining portions of the HGN test, which showed that Johnson exhibited six out of six clues of impairment. Thus, *Sultan's* holding does not require reversal in this case, and in light of the evidence that the HGN test was properly performed, the trial court did not err by denying Johnson's motion regarding the test results. Any conflicting expert testimony or video evidence challenging the officer's performance of the test goes to

---

[8] (Emphasis supplied.) Id. at 406.

[9] See id. at 407 (1).

the weight of the HGN test results and the officer's conclusions of Johnson's impairment, not the admissibility of the HGN test results themselves.[10]

2. Next, Johnson argues that the trial court erred by denying four of his requests to charge, including three charges related to the HGN test and one charge regarding a suspect's refusal to voluntarily consent to an implied consent test. We disagree.

We review de novo an allegedly erroneous jury instruction, which is a legal question.[11]

(a) The trial court charged the jury that

> [t]he [HGN] test about which you heard testimony is based on well-known and medically accepted principles that nystagmus can be caused by ingestion of alcohol. The HGN . . . test is an accepted, common procedure that has reached a state [of] verifiable certainty in the scientific community and is admissible as a basis upon which an officer can determine whether a driver was impaired by alcohol. You may consider the [HGN] evaluation as a symptom indicative of, but not

---

[10] See *Roswell v. State*, 312 Ga. App. 559, 562-563 (2) (a) (718 SE2d 890) (2011). See also *Parker*, 307 Ga. App. at 64 (2); *Duncan v. State*, 305 Ga. App. 268, 272 (2) (a) (699 SE2d 341) (2010).

[11] See *Collier v. State*, 288 Ga. 756, 761(1) (a) (707 SE2d 102) (2011) (Nahmias, J., concurring specially) (explaining that review of an objected to jury charge is de novo, while this Court applies "plain error" review when no objection is lodged). See also *Duprel v. State*, 301 Ga. App. 469, 472 (2) (687 SE2d 863) (2009).

7

determinative of the presence of alcohol. In other words, the presence of alcohol is just one factor that might cause [HGN] to occur.

The HGN evaluation of a subject, suspect may be subject to human error in its administration or interpretation. The jury must decide what weight, if any, to give the HGN evaluation. The other field sobriety evaluations about which you heard testimony, such as the one-legged stand and walk-and-turn tests, are not scientific tests but are simply observations of the driver's behavior by the officer.

In considering the evidence, you should consider all the factors surrounding the administration of such exercises.

"This charge is a correct statement of the law and has been approved by this Court."[12] Moreover, this charge fully incorporated the language in Johnson's first request to charge related to the HGN test. His two remaining requests to charge incorporated various principles related to the legal determinations made by a trial court when evaluating the admissibility of evidence of an HGN evaluation and argumentatively phrased statements about various causes of nystagmus other than alcohol ingestion. Although the second requested charge was a correct statement of the law, it was unnecessary for the jury given the adequacy of the charge given. As

---

[12] *Duncan*, 305 Ga. App. at 273 (2) (b).

for the third, it was not a correct statement of the law of this State. Accordingly, there was no error by the trial court in refusing the three charges related to the HGN test requested by Johnson.

(b) Johnson also contends that the trial court erred by refusing his request to charge the jury that the State can obtain a search warrant to test a suspect's blood for the presence of alcohol in the event that the suspect refuses a State-administered test under the implied consent law. We do not agree that the failure to charge the jury with this principle was erroneous. The court properly charged the jury regarding implied consent law, that a refusal could be admitted into evidence, and that such evidence was not sufficient alone to prove that an individual was guilty of DUI - less safe.[13]

3. Finally, Johnson argues that the trial court erred by admitting post-arrest statements he made in the back of the officer's cruiser, specifically his statement that "I'm really f---ed. I mean, I'm really, really, really, really f---ed," because the statement's probative value was outweighed by its prejudicial affect. We disagree.

_____

[13] See OCGA § 40-5-67.1 (b).

We will disturb a trial court's decision to admit a suspect's statements only if the determination was clearly erroneous.[14] "OCGA § 24-3-3[15] provides that declarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, shall be admissible in evidence as part of the res gestae."[16] Here, Johnson's recorded utterance made while in the back of the patrol car waiting to be transported to jail was within the res gestae of the arrest. In addition, "a defendant's incriminating statement is admissible when it constitutes an admission against the defendant's penal interest because a *defendant's* declaration against penal interest is the admission of a party-opponent."[17] That the statement was ambiguous — the object of his statement may have been the collateral consequences affecting his medical licensure rather than the fact that he was actually less safe to operate a vehicle because of his level of intoxication — was an issue for

---

[14] See *Sweney v. State*, 265 Ga. App. 21, 22 (1) (593 SE2d 12) (2003).

[15] For cases tried after January 1, 2013, the new Evidence Code, and specifically in this instance, OCGA § 24-8-803, would apply. See Ga. L. 2011, pp. 99, 214, § 101."

[16] (Punctuation omitted.) *Sweney*, 265 Ga. App. at 22 (1).

[17] (Citations and punctuation omitted; emphasis in original.) *Teal v. State*, 282 Ga. 319, 327 (3) (647 SE2d 15) (2007).

10

the jury. Moreover, it is unlikely that any rational juror's passion would have been unduly inflamed from the mere fact that Johnson used a curse word during the course of an arrest. Accordingly, this enumeration is without merit.

*Judgment affirmed. McFadden and Boggs, JJ., concur.*