303 Ga. 276
FINAL COPY

S17G0884. WALSH v. THE STATE.

HINES, Chief Justice.

This Court granted certiorari to the Court of Appeals in *State v. Walsh*, 339 Ga. App. 894 (795 SE2d 202) (2016), to determine whether the Court of Appeals erred in reversing the trial court's grant of James Roy Walsh's motion to suppress the results of a horizontal gaze nystagmus ("HGN") test conducted on him in connection with his arrest and charges for driving under the influence of alcohol to the extent that it was less safe for him to drive and other traffic offenses. Finding that the Court of Appeals did so err, we reverse the judgment of that Court.

According to testimony during a hearing on Walsh's motion, on June 5, 2015, a law enforcement officer investigated a report of a person asleep inside a vehicle in a traffic lane. The officer approached the car and discovered Walsh in the driver's seat, with his head down on his chest and a foot on the brake pedal; the driver's window was down; Walsh's hand was on the gear shift; and

the car was in drive and running. The officer smelled a strong odor of an alcoholic beverage, and observed that Walsh had no reaction to the flashing police lights. Walsh awoke after multiple attempts to wake him, but appeared confused and his eyes were bloodshot, glassy, and extremely watery. When asked to turn off the car's engine, Walsh did not, and the officer reached into the car and turned it off; shortly thereafter, Walsh pressed the accelerator all the way to the floorboard. The officer asked Walsh to exit the vehicle and, after several unanswered requests, removed him from the car.

The officer then began administering field sobriety tests, including the HGN test. Nystagmus is an involuntary jerking of the eye, and can occur as a result of impairment by depressants (including alcohol), inhalants, or dissociative anesthetics. During the HGN test, Walsh was wearing eyeglasses; the officer did not ask Walsh to remove his glasses and Walsh did not do so of his own volition. The officer testified that his training requires him to have the subject remove his eyeglasses before an HGN test is performed, and he could not recall any other case in the more than 800 HGN tests he had administered in which he did not ask the suspected offender to remove his eyeglasses. The officer further testified that the manner in which this test was conducted was a "substantial deviation" from

his training regarding proper HGN procedures; he also testified that this deviation from the correct protocol was nonetheless "substantial compliance with the guidelines [that could] still yield informative results," did not cause a difference in the test results, and that he was still able to make a fair observation of the six validated clues of the HGN test.[1] Finding that the State failed to meet its burden to establish that the HGN test was performed in an acceptable manner, the trial court granted the motion to exclude evidence derived from it.

As the Court of Appeals noted in reversing,

> the HGN test is an accepted, common procedure that has reached a state of verifiable certainty in the scientific community and is admissible as a basis upon which an officer can determine that a driver was impaired by alcohol. [Cit.]

*Walsh* at 896. The acceptance of the HGN test as having "reached a state of verifiable certainty in the scientific community," is rooted in this Court's decision in *Harper v. State*, 249 Ga. 519 (292 SE2d 289) (1992). The *Harper* opinion

> guides a trial court's determination of whether a scientific principle or technique is competent evidence in a criminal case:

---

[1] The officer testified that the HGN test is performed by moving a stimulus, often a pen, through the subject's vision, while the test subject keeps his vision fixed on the stimulus; the tester then looks for nystagmus in the subject's eyes, and there are "six validated clues; a lack of smooth pursuit in [each] eye, a distinct nystagmus at maximum deviation in [each] eye[,] and an onset of nystagmus prior to 45 degrees in [each eye.]" See also *Parker v. State,* 307 Ga. App. 61, 64 (2) (704 SE2d 438) (2010); *Hawkins v. State*, 223 Ga. App. 34, 37-38 (1) (476 SE2d 803) (1996).

[I]t is proper for the trial judge to decide whether the procedure or technique in question has reached a scientific stage of verifiable certainty, or in the words of Professor Irving Younger, whether the procedure "rests upon the laws of nature." The trial court may make this determination from evidence presented to it at trial by the parties; in this regard expert testimony may be of value. Or the trial court may base its determination on exhibits, treatises or the rationale of cases in other jurisdictions. The significant point is that the trial court makes this determination based on the evidence available to him rather than by simply calculating the consensus in the scientific community.

(Citations and footnote omitted.) 249 Ga. at 525-526 (1). And "[o]nce a procedure has been recognized in a substantial number of courts, a trial judge may judicially notice, without receiving evidence, that the procedure has been established with verifiable certainty, or that it rests upon the laws of nature." Id. at 526 (1).

*Spencer v. State*, 302 Ga. 133, 135 (805 SE2d 886) (2017) (Footnote omitted.)

In *Hawkins v. State*, 223 Ga. App. 34, 37-38 (1) (476 SE2d 803) (1996), using the *Harper* standard, the Court of Appeals examined treatises, as well as the rationale of the opinions of various courts, and concluded that the HGN test "has reached a state of verifiable certainty in the scientific community and is admissible as a basis upon which an officer can determine that a driver was impaired by alcohol." Id. at 38 (1). Thus, the *Hawkins* Court ruled, "the HGN test[ ] may be admitted into evidence without first obtaining expert testimony

4

regarding the scientific validity of the tests. [Cits.]" Id. at 39 (1). *Hawkins* also held that "field sobriety tests must be administered properly under law enforcement guidelines." Id. at 38 (1). However, *Hawkins* left some question about the allocation of the burden of proof regarding any issue of whether the tests were properly administered when it said that

> we concur with appellant that field sobriety tests must be administered properly under law enforcement guidelines; however, a challenge to the administration of the tests is not the same as a challenge to the foundation for admission of the tests pursuant to *Harper*, supra. [Cit.] A challenge to the method by which an admissible test is administered would be the subject of a timely motion or objection at trial and a subsequent analysis thereon by the trial court on a case–by–case basis. [Cits.] The burden would be on the party raising objection to show error in the administration of the tests. [Cit.]

Id.

Recognizing that *Hawkins* might cause some confusion as to the burden of proof regarding the proper administration of HGN tests, in *State v. Tousley*, 271 Ga. App. 874 (611 SE2d 731) (2005), the Court of Appeals sought to clarify the matter. Thus, the Court noted that

> [t]he foundation for evidence based on a scientific principle or technique requires two findings regarding the evidence's reliability: such evidence is admissible upon a showing by the party offering the evidence that (1) the general scientific principles and techniques

5

involved are valid and capable of producing reliable results, and (2) the person performing the test substantially performed the scientific procedures in an acceptable manner.

Id. at 876 (1) (a) (Citations, punctuation, and footnote omitted.)   And, applying those concepts to the context of an HGN test, the Court specifically noted that the test has two components, and that

> [a]lthough a trial court may judicially notice that the standardized HGN test generally has been established with verifiable certainty, the State, as the party offering the evidence, must still satisfy the second component of the foundation, that is, that the tester "substantially performed the scientific procedures in an acceptable manner." [Cit.]

Id. at 879 (1) (b) (ii).  Further, the Court of Appeals addressed its prior language in *Hawkins* regarding the burden of proof, and specified that

> the State, as the party offering the evidence, must show that the officer "substantially performed the scientific procedures in an acceptable manner," that is, "properly under law enforcement guidelines." The burden to show error in the administration of the tests shifts to the defendant, as the party raising a foundational objection, only after the State fully satisfies its foundational burden. [Cit.]  To the extent that our opinion in *Hawkins v. State* can be read to suggest that HGN test results are not subject to the foundational requirement that the tester substantially performed the scientific procedures in an acceptable manner, we take this opportunity to limit that statement of the law, consistent with this opinion. To the extent this misstatement was incorporated into our later opinions, [Cits.], we take this opportunity to limit those opinions as well.

Id. at 880 (n. 8). Thus, *Tousley* left no question that for the admission of HGN test results, the State has a two-prong burden: (1) to show that the general scientific principles and techniques involved are valid and capable of producing reliable results – a burden which can be met by the trial court taking judicial notice of that fact in the case of HGN testing – and (2) that the person performing the test substantially performed the scientific procedures in an acceptable manner. And, in recognizing that the proper administration of a test is part of the foundation for scientific evidence such as the results of an HGN test, the Court of Appeals was acting in accord with prior decisions of this Court. See *Monroe v. State*, 272 Ga. 201, 204 (n. 4) (528 SE2d 504) (2000); *Caldwell v. State*, 260 Ga. 278, 285 (1) (b) (393 SE2d 436) (1990). As to the trial court's determination regarding the second prong of the test, the Court of Appeals observed that

> [i]n ruling on whether an HGN test was administered properly under law enforcement guidelines, [Georgia] courts have considered whether the arresting officer was sufficiently trained to give the test, whether the officer was experienced in administering the test, whether the officer administered the test according to the standardized techniques, and whether the officer scored or interpreted the test properly. [Cits.]

*Tousley*, supra at 879-880 (1) (b) (ii).

7

As noted, the trial court granted Walsh's motion to suppress the evidence of Walsh's HGN test, and was reversed on this point by the Court of Appeals. The State contends that, as the party offering the HGN evidence, it met its burden to show that the HGN test was substantially performed in an acceptable manner by having the officer testify during the hearing on Walsh's motion as to the facts regarding his administration of the test and, as an expert, testify that his performance of the test while Walsh was wearing glasses had no effect on the officer's interpretation of the test. Certainly, the Court of Appeals has stated that

> [t]o show that the officer substantially performed the HGN test in an acceptable manner, the State may have the arresting officer testify both as a fact witness, regarding how he or she administered and interpreted the test, and as an expert witness, giving an opinion that he or she administered and interpreted the test properly under law enforcement guidelines. [Cits.]

Id. at 880. But here, the Court of Appeals looked to testimony from the officer that was more than simply his opinion whether he "administered and interpreted the test properly under law enforcement guidelines." Id. See *Walsh*, supra at 896. Rather, the officer's testimony was that, in fact, the test was administered in a manner *contrary* to his training through the Georgia Public Safety Training Center and other sources, which was to have the subject remove his glasses, if worn;

8

indeed, the officer testified that it was a "substantial deviation" from that training to conduct the test while the subject was wearing glasses, and that conducting the test in that manner was outside his experience. While the officer also testified to his opinion that this deviation from the guidelines made no difference in his interpretation of the test results, that is an issue beyond whether he administered and interpreted the test properly under law enforcement guidelines, the area in which his expertise lay.[2]

In reviewing the trial court's ruling, the Court of Appeals stated that a de novo standard of review was appropriate, and under that review, reversed the trial court. As we have stated, there are

> three fundamental principles which must be followed when conducting appellate review of a trial court's ruling on a motion to suppress. First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are

---

[2] Regarding the effect that wearing glasses might have on the "verifiable certainty" of an HGN test, see *Harper*, supra, there was no evidence establishing that the officer was qualified to render such an opinion. As to the fact that the officer was never formally tendered to the trial court as an expert, but nonetheless testified as he did at the hearing, it is clear from the trial court's remarks at the hearing, and its subsequent order, that the trial court did not, either explicitly or tacitly, accept the officer as an expert on the scientific underpinnings and reliability of the HGN test and interpretation of results when the subject is wearing glasses. See *Fielding v. State*, 278 Ga. 309, 311 (3) (602 SE2d 597) (2004) ("If, *after qualifying a witness as an expert* but without a formal tender, counsel proceeds to ask for expert opinion evidence, the trial court has tacitly or impliedly accepted the witness as an expert.") (Emphasis supplied.)

analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support them. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment. These principles apply equally whether the trial court ruled in favor of the State or the defendant.

*Brown v. State*, 293 Ga. 787, 803 (3) (b) (2) (750 SE2d 148) (2013). (Citations and punctuation omitted.)

Further,

the trier of fact is not obligated to believe a witness even if the testimony is uncontradicted and may accept or reject any portion of the testimony. Thus, a rational trier of fact can choose to reject even "undisputed" testimony. Factors such as demeanor, contradictory or inconsistent statements and evidence that an officer had "ulterior motives" can all lead a finder of fact to disregard testimony by an officer.

Id. at 804 (Citation and punctuation omitted.)

Despite these principles, in determining that a de novo standard of review was appropriate, the Court of Appeals cited this Court's opinion in *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994). In that case, this Court stated that,

[w]hile the trial court's findings as to disputed facts in a ruling on a motion to suppress will be reviewed to determine whether the ruling

10

was clearly erroneous [Cits.], where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review. [Cits.]

Id. However, it cannot be said that the evidence presented to the trial court during the hearing on Walsh's motion to suppress was "uncontroverted," or that the evidence did not involve the credibility of any witness, because the ruling depended upon certain aspects of the officer's testimony. In granting the motion, the court refused to accept the officer's testimony that the test as performed was valid, rejecting that evidence as simply not credible.[3] The trial court not only concluded that the State failed to present evidence that performing the HGN test while a subject was wearing glasses was an appropriate manner in which to conduct the test, but the court scrutinized the officer's testimony; not only did the officer testify that conducting an HGN test in such a manner was contrary to his training regarding proper procedures, but the court specifically noted that the

[3] Although the trial court made a statement from the bench regarding the officer's credibility, the court did not address the officer's ability to testify to his conclusion that Walsh's glasses did not impact the results of the test. Rather, after viewing a video recording of the officer's encounter with Walsh, beginning before Walsh left his car and lasting until his arrest (the recording was made from another law enforcement vehicle), the court said that what the court observed on the recording was largely consistent with the officer's testimony, and did not impeach his credibility; the recording depicted the movements of the officer and Walsh, viewed from a vantage point behind Walsh, and had no bearing on the officer's testimony regarding the validity of an HGN test when conducted when the subject's glasses were not removed.

11

officer testified not only that allowing such a test to occur was contrary to "standard practice," but also contrary to "better practice." Accordingly, it is plain that the trial court found a conflict in the officer's testimony that, allowing a subject to wear glasses is a "substantial deviation" from the proper procedures for conducting the test, and that doing so was nonetheless "substantial compliance" with the guidelines such that the test was conducted in an acceptable manner.[4] *Tousley*, supra at 879-880 (1) (b) (ii). As that evidence was inconsistent and in conflict, the trial court could reject some portion of it, *Brown*, supra at 804, and was certainly authorized to reject the testimony that the test was done in substantial compliance with the guidelines. And, under the trial court's resolution of that conflict, it was clear that the State failed to meet its foundational burden to show "that the officer 'substantially performed the scientific procedures in an acceptable manner,' that is, 'properly under law enforcement guidelines.' " *Tousley*, supra at 880 (n. 8). Accordingly, it was error for the Court of Appeals to state that "the evidence that Walsh's glasses remained on while the HGN test was administered goes to the weight of the test results, not their admissibility.

---

[4] In a testamentary conflict not cited by the trial court, the officer also testified that the presence of glasses "might" impair "[his] ability to observe the full continuum of the horizontal gaze," and at another time, testified that there was "no chance" that Walsh's glasses "in any way impair[ed his] ability to read the response" to the HGN test.

12

[Cit.]" *Walsh*, supra at 897.

The crux of the matter is that the HGN test, and its procedures, have been accepted by a sufficient number of courts *because* the test and procedures have "reached a scientific state of verifiable certainty." *Harper*, supra at 525 (1). It is the examination by multiple courts, and the consequent establishment of verifiable certainty to those courts, that authorizes a trial court to take judicial notice of the reliability of the HGN test.[5] See *Hawkins*, supra at 36 (1) ("once a procedure has been utilized for a significant period of time, and expert testimony has been received thereon in case after case, the trial court does not have to keep reinventing the wheel") The established procedures have created that reliability, and that is why the State must produce satisfactory evidence that the test at issue was done consistently with those procedures.

The proper administration of Walsh's HGN test was part of the State's foundational burden, and under the evidence presented during the hearing on the

---

[5] In *Tousley*, supra at 876 (n. 1), the Court of Appeals noted that evidence based upon a scientific principle or technique is sometimes called "novel scientific evidence." We take this opportunity to observe that such a principle or technique may have reached a state of verifiable certainty in the scientific community such that taking judicial notice of it under *Harper*, supra, occurs with considerable frequency, and that this may make it appear that the scientific evidence has lost any "novelty." Nonetheless, proper administration of the associated testing cannot be considered to have become routine, but must be satisfactorily established in every prosecution.

motion to suppress, the trial court did not clearly err in granting the motion. Consequently, it was error for the Court of Appeals to reverse the ruling of the trial court.

Judgment reversed. All the Justices concur.

Decided March 5, 2018.

Certiorari to the Court of Appeals of Georgia — 339 Ga. App. 894.

George C. Creal, Jr., for appellant.

Donna C. Stribling, Solicitor-General, William T. Kemp III, Kenneth T. Edgerton, Wystan B. Getz, Assistant Solicitors-General, for appellee.

14